# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 23-ml-179 |
| Information associated with @RobertoFrascat1 (including NCMEC CyberTipline Report 106402213) stored at premises controlled by Twitter, Inc. | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, hereby incorporated by reference

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| See Attached Affidavit in Support of Search Warrant | |

The application is based on these facts:

See Attached Affidavit in Support of Search Warrant

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
/s/ Todd C. Bina
*Applicant's signature*

_____
Todd C. Bina, FBI, Supervisory Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: _____ 01/31/2023 _____

_____
*Judge's signature*

City and state: _____ Washington, D.C. _____

_____
Robert B. Collings, United States Magistrate Judge
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No.  23-ml-179 |
| Information associated with @RobertoFrascat1 | ) |
| (including NCMEC CyberTipline Report 106402213) | ) |
| stored at premises controlled by Twitter, Inc. | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Northern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, hereby incorporated by reference

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, hereby incorporated by reference

**YOU ARE COMMANDED** to execute this warrant on or before _____February 14, 2023_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   Robert B. Collings, United States Magistrate Judge .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____                _____
                                                                                        *Judge's signature*

City and state:      Washington, D.C.                Robert B. Collings, United States Magistrate Judge
                                                                                        *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  23-ml-179 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A
### Property to Be Searched

This warrant applies to information that is associated with the Twitter account identified by **@RobertoFrascat1 (including NCMEC CyberTipline Report 106402213)**, and is stored at premises owned, maintained, controlled, or operated by Twitter, Inc., a company that accepts service of legal process at 1355 Market Street, Suite 900, San Francisco, California.

## ATTACHMENT B

**Particular Things to be Seized and Procedures
to Facilitate Execution of the Warrant**

I.    **Information to be disclosed by Twitter, Inc. ("PROVIDER") to facilitate
execution of the warrant**

To the extent that the information described in Attachment A is within the possession,

custody, or control of PROVIDER, regardless of whether such information is located within or

outside of the United States, including any messages, records, files, logs, or other information

that have been deleted but are still available to PROVIDER, or have been preserved pursuant to a

request made under 18 U.S.C. § 2703(f), PROVIDER is required to disclose the following

information to the government for each account or identifier listed in Attachment A (the

"Account"):

a.    For the time period of October 29, 2021 to and including November 9, 2021:  The

contents of any available messages or other communication associated with the

Account (including, but not limited to, messages, attachments, draft messages, posts,

chats, video calling history, "friend" requests, discussions, recordings, images, or

communications of any kind sent to and from the Account, including stored or

preserved copies thereof), and related transactional records for all PROVIDER

services used by an Account subscriber/user, including the source and destination

addresses and all Internet Protocol ("IP") addresses associated with each message or

other communication, the date and time at which each message or other

communication was sent, and the size and length of each message or other

communication;

b. For the time period of October 29, 2021 to and including November 9, 2021: All photos and videos uploaded by the Account and all photos or videos uploaded in which the Account has been "tagged", including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

c. From the date the Account was created to the present: Basic subscriber records and login history, including all records or other information regarding the identification of the Account, to include full name, physical address, telephone numbers, birthdate, security questions and passwords, and other personal identifying information, records of session times and durations, the date on which the Account was created, the length of service, types of services utilized by the Account, the IP address used to register the Account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses or telephone numbers provided during registration, methods of connecting, log files, means and source of payment (including any credit or bank account number), and any account(s) linked by machine cookies (meaning all Twitter user identification numbers ("user IDs") that logged into Twitter by the same machine as the Account;

d. For the time period of October 29, 2021 to and including November 9, 2021: All records or other information related to the Account, including address books, contact and "friend" lists, calendar data, and files; profile information; "News Feed" information; "Wall" postings; Tweets; Re-Tweets; Notes; groups and networks of which the Account is a member; future and past event postings; rejected "friend" requests and blocked users; status updates; comments; gifts; "pokes"; "tags"; the account's usage of the "like" feature, including all Twitter posts and all non-Twitter

2

webpages and content that the user has "liked"; searches performed by the Account; privacy settings, including privacy settings for individual Twitter posts and activities; information about the Account's access and use of Twitter applications;

e.  For the time period of October 29, 2021 to and including November 9, 2021:  All records pertaining to communications between PROVIDER and any person regarding the Account, including contacts with support services and records of actions taken;

f.  All records pertaining to devices associated with the Account and software used to create and access the Account, including device serial numbers, instrument numbers, model types/numbers, International Mobile Equipment Identities ("IMEI"), Mobile Equipment Identifiers ("MEID"), Global Unique Identifiers ("GUID"), Electronic Serial Numbers ("ESN"), Android Device IDs, phone numbers, Media Access Control ("MAC") addresses, operating system information, browser information, mobile network information, information regarding cookies and similar technologies, and any other unique identifiers that would assist in identifying any such device(s);

g.  For the time period of October 29, 2021 to and including November 9, 2021:  All information held by PROVIDER related to the location and location history of the user(s) of the Account, including geographic locations associated with the Account (including those collected for non-PROVIDER based applications), IP addresses, Global Positioning System ("GPS") information, and information pertaining to nearby devices, Wi-Fi access points, and cell towers;

h.  Information about any complaint, alert, or other indication of malware, fraud, or terms of service violation related to the Account or associated user(s), including any memoranda, correspondence, investigation files, or records of meetings or discussions

3

about the Account or associated user(s) (but not including confidential

communications with legal counsel) and

i.    All information associated with NCMEC CyberTipline Report 106402213.

Within 14 days of the service of this warrant, PROVIDER shall deliver the information

set forth above via United States mail or courier to:  Supervisory Special Agent Corina Zapata,

Federal Bureau of Investigation, J. Edgar Hoover Building, MLAT Unit, Room 7848, 935

Pennsylvania Avenue, NW, Washington, D.C. 20535-0001, or via e-mail to

HQ_ISP_MLAT_Returns@FBI.gov.  PROVIDER is specifically authorized to transmit or send

the information specified below to the Federal Bureau of Investigation anywhere in the United

States, including, but not limited to, Washington, D.C.

**II.      Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of criminal laws of Switzerland, specifically Article 197 of the Swiss Criminal Code regarding child pornography, including, for the Account, information pertaining to the following matters:

(a)  Information that constitutes evidence of the identification or location of the user(s) of the Account;

(b)  Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with the Account about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

(c)  Information that constitutes evidence indicating the Account user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

(d)  Information that constitutes evidence concerning how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account user;

(e)  Information that constitutes evidence of the Account user uploading, viewing, sharing, and/or soliciting materials which contain child pornography or any communications regarding such materials;

(f)   Information that constitutes evidence of the Account user targeting or
communicating with minors or others for the purposes of engaging in sexual
contact with minors or establishing a relationship with minors (*i.e.* engaging in
"grooming" activities); and

(g) Information that constitutes evidence of concealment or an effort to conceal
information related to any of the above.

**III.      Government procedures for warrant execution**

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States and shared with appropriate foreign authorities.

Law enforcement personnel will then seal any information from PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH ONE ACCOUNT STORED AT PREMISES CONTROLLED BY TWITTER, INC. PURSUANT TO 18 U.S.C. 2703 AND 3512 | ML No. 23-ml-179 |
|---|---|

*Reference:      DOJ Ref. # CRM-182-84169; Subject Account: @RobertoFrascat1 (including NCMEC CyberTipline Report 106402213)*

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Todd C. Bina, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information which is associated with one account – that is, @RobertoFrascat1 (including NCMEC CyberTipline Report 106402213) – which is stored at premises controlled by Twitter, Inc. ("PROVIDER"), an electronic communications services provider and/or remote computing services provider which is headquartered at 1355 Market Street, Suite 900, San Francisco, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), and 3512(a), to require PROVIDER to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2.      The information requested in this search warrant is being sought pursuant to a request for assistance ("Request") from the Federal Office of Justice in Switzerland, transmitted to Washington, D.C.  Authorities in Switzerland are investigating J.G. (the "suspect") for distribution of child pornography offenses, which occurred on or about November 5, 2021, in violation of the criminal law of Switzerland, specifically, Article 197 of the Swiss Criminal Code.  This Request is made pursuant to the Treaty Between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters, Switz.-U.S., May 25, 1973, 27 U.S.T. 2019 (hereinafter, the "Treaty").  Under the Treaty, the United States is obligated to render assistance in response to the request.

3.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since 2005.  I am currently assigned to the International Operations Division, Mutual Legal Assistance Treaty Unit, in Washington, D.C.  My current duties include responding to requests from foreign governments pursuant to mutual legal assistance treaties, including serving as the affiant on search warrant affidavits, serving search warrants, and reviewing the data received in response thereto for relevance in compliance with the parameters of the search warrants.  During my employment with the FBI, I have conducted investigations related to numerous criminal and counterterrorism investigations.  I have experience in the execution of search warrants and the analysis of collected evidence.  Additionally, I have received training in the operation of computers and the collection and handling of digital evidence.

4.      The facts set forth in this affidavit are based upon information conveyed to the United States via a request made pursuant to the Treaty by authorities in Switzerland and upon my training and experience.  This affidavit is intended to show merely that there is sufficient

probable cause for the requested warrant.  It does not set forth all of my knowledge, or the

knowledge of others, about this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit, I

respectfully submit that there is probable cause to believe that violations of the criminal laws of

Switzerland have been committed by unknown individuals.  There is also probable cause to

search the information described in Attachment A for evidence, instrumentalities, contraband or

fruits of these crimes further described in Attachment B.

## JURISDICTION

6.      Pursuant to the applicable treaty, this Court has jurisdiction to issue the proposed

Order.  *See* Treaty art. 9(3) (authorizing courts to issue orders necessary to execute the request).

In addition, this Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711.  *See* 18 U.S.C. § 2703(a), (b)(1)(A) &

(c)(1)(A).  Specifically, the Court "is acting on a request for foreign assistance pursuant to

[18 U.S.C.] section 3512 . . . ."  18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C. § 3512(a)(2)(B)

(court may issue "a warrant or order for contents of stored wire or electronic communications or

for records related thereto, as provided under section 2703"), § 3512(c)(3) ("application for

execution of a request from a foreign authority under this section may be filed . . . in the District

of Columbia").

7.      This application to execute Switzerland's request has been approved and duly

authorized by an appropriate official of the Department of Justice, through the Criminal

Division, Office of International Affairs ("OIA").[1]  *See* 18 U.S.C. § 3512(a).  An OIA attorney has authorized the undersigned to file this application.

## **PROBABLE CAUSE**

8.      According to Swiss authorities, in December 2021, Swiss authorities received a National Center for Missing and Exploited ("NCMEC") report (the "NCMEC report") carrying NCMEC reference number 106402213.  The NCMEC report, which was reported by PROVIDER on or about November 8, 2021, indicated that on or about November 5, 2021, an unknown individual using the Twitter username @RobertoFrascat1 had uploaded five images that included child pornography on Twitter.  PROVIDER appended the images to the NCMEC report.

9.      Upon a review of the images, Swiss authorities determined that the images depicted minors due to the underdeveloped nature of the individuals' bodies, including their size, facial features, and lack of hair.  Swiss authorities further determined that one image depicted a naked male minor under the age of eighteen sitting on a chair with his legs spread and his penis visible.  Another image depicted a naked male minor under the age of eighteen lying on a bed with a tight collar around his neck, his legs spread, his penis visible, and a sex toy stuck in his anus.  Another image depicted a naked male minor under the age of eighteen lying on a bed with a tight collar around his neck holding a large dildo next to his penis.

---

[1]  The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

10.     According to the information provided by PROVIDER in the NCMEC report, the Twitter username @RobertoFrascat1 was registered on October 5, 2021 and had regular logins until at least November 7, 2021.  The account has since been suspended by PROVIDER.

11.     Based on the Internet Protocol addresses and phone number associated with the Twitter username @RobertoFrascat1, Swiss authorities identified the suspect as the likely user of the Twitter username @RobertoFrascat1.

12.     Swiss authorities seek records from PROVIDER in an effort to confirm that the Twitter username @RobertoFrascat1 is owned and used by the suspect as well as to determine the nature and scope of the suspect's criminal activities.

## BACKGROUND CONCERNING PROVIDER'S ACCOUNTS

13.     PROVIDER is the provider of the internet-based account identified by @RobertoFrascat1.

14.     PROVIDER owns and operates a free-access social networking and microblogging website of the same name that can be accessed at http://www.twitter.com ("Twitter").  The website is owned and operated by PROVIDER.

15.     Twitter is a website which offers a social networking and microblogging service, enabling its users to send and read messages called "Tweets."  "Tweets" are text-based posts of up to 280 characters displayed on the user's profile page.  Tweets are publicly visible by default; however, senders can restrict message delivery to their friends list.  Users may subscribe to other users' Tweets.  This is known as "following" and subscribers are known as "followers."  All users can send and receive Tweets via the Twitter website or compatible external applications, such as for smartphones.

16.     Twitter is available free of charge to Internet users.  Subscribers obtain an account by registering on the Internet with Twitter.  PROVIDER requests subscribers to provide basic information, such as name and other personal/biographic information.  PROVIDER, however, does not verify the information provided.

17.     PROVIDER maintains electronic records pertaining to the individuals and companies for which they maintain subscriber accounts.  These records include account access information, e-mail transaction information, and account application information.

18.     Subscribers to Twitter may access their accounts on servers maintained and/or owned by PROVIDER from any computer connected to the Internet located anywhere in the world.

19.     Any Tweet that is sent to a Twitter subscriber is stored in the subscriber's account on PROVIDER's servers until the subscriber deletes the message.  If the message is not deleted by the subscriber, the account is below the maximum limit, and the subscriber accesses the account periodically, that message can remain on PROVIDER's servers indefinitely.

20.     When the subscriber sends a Tweet, it is initiated at the user's computer, transferred via the Internet to PROVIDER's servers, and then transmitted to its end destination. Unless the sender of the Tweet specifically deletes the message from the PROVIDER server, the message can remain on the system indefinitely.

21.     A Twitter subscriber can store files, including image files, on servers maintained and/or owned by PROVIDER.

22.     Tweets and other files stored on a PROVIDER server by a subscriber may not necessarily be located in the subscriber's home computer.  E-mails and/or other files on the PROVIDER server for which there is insufficient storage space in the subscriber's computer

and/or which a subscriber does not wish to maintain in the computer in his/her residence may be stored on the PROVIDER server. A search of the files in the computer in the subscriber's residence will not necessarily uncover the files that the subscriber has stored on the PROVIDER server.

23.     Based on my training and experience, I know that providers such as PROVIDER use cookies and similar technologies to track users visiting PROVIDER's webpages and using its products and services. Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer. When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before. This sort of technology can be used to track users across multiple websites and online services belonging to PROVIDER. More sophisticated cookie technology can be used to identify users across devices and web browsers. From training and experience, I know that cookies and similar technology used by providers such as PROVIDER may constitute evidence of the criminal activity under investigation. By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a PROVIDER account and determine the scope of criminal activity.

24.     Based on my training and experience, I know that PROVIDER maintains records that can link different PROVIDER accounts to one another, by virtue of common identifiers, such as common e-mail addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group of persons, used multiple PROVIDER accounts. Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be

7

useful evidence in identifying the person or persons who have used a particular PROVIDER account.

25.     Based on my training and experience, I know that subscribers can communicate directly with PROVIDER about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Providers such as PROVIDER typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

26.     In summary, based on my training and experience in this context, I believe that the computers of PROVIDER are likely to contain user-generated content such as stored electronic communications (including retrieved and unretrieved messages for PROVIDER subscribers), as well as PROVIDER-generated information about its subscribers and their use of PROVIDER services and other online services.  In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.  In fact, even if subscribers provide PROVIDER with false information about their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

27.     PROVIDER also retains Internet Protocol ("IP") logs for a given Twitter user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Twitter, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a

8

Twitter profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

28.     As explained above, information stored in connection with a Twitter account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the investigating authorities to establish and prove each element of the offense or, alternatively, to exclude the innocent from further suspicion.  From my training and experience, a Twitter user's IP log, stored electronic communications, and other data retained by PROVIDER, can indicate who has used or controlled the Twitter account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and "tagged" photos (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the Twitter account at a relevant time.  Further, Twitter account activity can show how and when the account was accessed or used.  For example, as described above, PROVIDER logs the IP addresses from which Twitter users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Twitter access, use, and events relating to the crime under investigation.  Additionally, PROVIDER builds geo-location into some of its Twitter services.  Geo-location allows, for example, users to "tag" their location in posts.  This geographic and timeline information may tend to either inculpate or exculpate the Twitter account user.  Last, Twitter account activity may provide relevant insight into the Twitter account user's state of mind as it relates to the offense under investigation.  For

example, information on the Twitter account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).[2]

## REQUEST TO SUBMIT WARRANT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

29.      I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for a Search Warrant.  I submit that OIA Trial Martyna Pospieszalska, an attorney for the United States, is capable of identifying my voice and telephone number for the Court.

---

[2]  At times, social media providers such as PROVIDER can and do change the details and functionality of the services they offer.  While the information in this section is true and accurate to the best of my knowledge and belief, I have not specifically reviewed every detail of PROVIDER's services in connection with submitting this application for a search warrant.  Instead, I rely upon my training and experience, and the training and experience of others, to set forth the foregoing description for the Court.

## **CONCLUSION**

30.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on PROVIDER who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
/s/ Todd C. Bina

Todd C. Bina
Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on January 31, 2023.

_____
Robert B. Collings
UNITED STATES MAGISTRATE JUDGE

11

## Relevant Provisions of the Swiss Criminal Code

**Article 197**

(1)  Any person who offers, shows, passes on or makes accessible to a person under the age of sixteen pornographic documents, sound or visual recordings, depictions or other items of a similar nature or pornographic performances,[3] or broadcasts any of the same on radio or television is liable to a custodial sentence not exceeding three years or to a monetary penalty.

(2)  Any person who exhibits in public items or performances as described in paragraph 1 above or shows or otherwise offers the same unsolicited to others is liable to a fine. Any person who, in advance, draws the attention of visitors to private exhibitions or performances to their pornographic character does not commit an offense.

(3)  Any person who recruits or causes a minor to participate in a pornographic performance is liable to a custodial sentence not exceeding three years or to a monetary penalty.

(4)  Any person who produces, imports, stores, markets, advertises, exhibits, offers, shows, passes on or makes accessible to others, acquires, or procures or possesses via electronic media or otherwise items or performances as described in paragraph one above that contain sexual acts involving animals, acts of violence involving adults or non-genuine sexual acts with minors[4] is liable to a custodial sentence not exceeding three years or to a monetary penalty. If the items or performances contain genuine sexual acts with minors, the penalty is a custodial sentence not exceeding five years or a monetary penalty.

(5)  Any person who consumes or who for his or her own consumption produces, imports, stores, acquires or procures or possesses via electronic media or otherwise items or performances as described in paragraph 1 above that contain sexual acts involving animals, acts of violence involving adults or non-genuine sexual acts with minors is liable to a custodial sentence not exceeding one year or to a monetary penalty. If the items or performances contain genuine sexual acts with minors, the penalty is a custodial sentence not exceeding three years or a monetary penalty.

---

[3] According to Swiss authorities, "pornographic documents" and "pornographic performances" are defined as "written materials, audio or visual recordings, images, objects and performances that are of such a nature as to arouse the consumer sexually, that the sexuality depicted is so far removed from the human and emotional character that it involves the victim appearing as a pure sexual object at the free disposal of anyone and that it is shown in a crude, vulgar and insistent manner."

[4] According to Swiss authorities, a minor is defined as a person under the age of eighteen.